**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLORADO AND SANTA FE ENERGY COMPANY, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>NEXANT, INC.,<br><br>    Defendant.<br>_____/ | No. C 12-00011 JSW<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND** |

**INTRODUCTION**

This matter comes before the Court upon consideration of the Motion to Dismiss, filed by Defendant Nexant, Inc. ("Nexant"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and has had the benefit of oral argument. The Court HEREBY GRANTS Nexant's motion.[1]

**BACKGROUND**

The following facts are taken from the Complaint and, for purposes of this motion, are accepted as true, unless otherwise noted. Plaintiff, Colorado and Santa Fe Energy Company, LLC ("Colorado"), has an ownership interest in and is a managing member of the Fossil Gulch Facility, a renewable energy facility. For each megawatt hour ("MWh") of energy it creates, the Fossil Gulch Facility also creates a "Renewable Energy Credit ("REC")." (Compl. ¶¶ 7-8.)

---

[1] Plaintiff's opposition includes footnote text that does not comply with Northern District Civil Local Rule 3-4(c)(2). **The Court places all parties on notice that, in the future, it shall strike non-conforming briefs.**

1  "RECs are non-tangible energy commodities that may be sold to marketers, brokers or asset
2  managers who then resell them at a later date." (*Id.* ¶ 9.)

3  On September 8, 2012, Colorado and Nexant entered into a Renewable Energy
4  Certificate Master Sales Agreement, which is governed by California law. (Compl. ¶ 11, Ex. 1
5  (Master Agreement § 18).) Pursuant to the Master Agreement, Colorado agreed to sell RECs to
6  Nexant for an initial five (5) year period. The parties also contemplated that they would enter
7  subsequent Sales Order Agreements during this term. (Compl. ¶¶ 11, 13; Master Agreement §
8  2.) The terms of the Master Agreement provide that Colorado can deliver the RECs to Nexant
9  either by: (1) a commercial tracking system; or (2) a signed Renewable Generator Attestation.
10 (Master Agreement § 5.) The parties provided that "[i]f the Delivery Method is a tracking
11 system, Delivery shall be deemed completed once electronic delivery is made into Nexant's
12 account in accordance with the operating rules of the system." (*Id.*)

13 The parties also provided that the "Contract Quantity associated with each Sales Order
14 Agreement shall be delivered by [Colorado] to Nexant during the Delivery Period identified in
15 the Sales Order Agreement ("Delivery Period"). Delivery shall be deemed completed when
16 [Colorado] delivers the Contract Quantity to Nexant by the Delivery Method defined in the
17 Sales Order Agreement." (*Id.*) In addition to identifying the Delivery Method, the Sales Order
18 Agreement also would identify: (1) the time frame during which the RECs would be
19 accumulated ("Production Period"); (2) the quantity of RECs to be delivered ("Contract
20 Quantity"); and (3) the price Nexant agreed to pay for each REC delivered. (Compl. ¶ 14;
21 Master Agreement 2.)

22 The parties executed the first Sales Order Agreement on September 8, 2010. (Compl.
23 ¶ 15, Ex. 2 ("September Sales Order").) It reflects that: (1) the Production Period is January 1,
24 2011 through December 23, 2011; (2) that the Delivery Method is "WREGIS," which stands for
25 Western Renewable Energy Generation Information System; (3) the Delivery Period would be
26 "on or before" April 15, 2011, July 15, 2011, October 15, 2011, and January 15, 2012; (4) the
27 Contract Quantity was "100% of output from" the Fossil Gulch Facility; and (4) the Base Price
28 would be $8.00 per MWh. (Compl. ¶ 19, Ex. 2.)

2

1  According to Colorado, "[p]ursuant to the Operating Rules of WREGIS, specifically
2  Rule 12.2, ninety (90) days after the end of each generation month, the WREGIS system created
3  RECs for the" megawatt hours of electricity produced by the Fossil Gulch Facility in that
4  generation month. The RECs, once created, were then available for delivery to Nexant."
5  (Compl. ¶ 20.)

6  On or about May 24, 2011, Colorado logged in to the WREGIS system and transferred
7  to Nexant all RECs that had been created since January 1, 2011. On May 26, 2011, Nexant
8  rejected delivery. (Compl. ¶¶ 22-23.) Colorado alleges that Nexant did not notify it of the
9  rejection until June 16, 2011. Nexant then informed Colorado that it would not accept delivery
10 of the RECs via WREGIS, because that system would not deliver the RECs within the fifteen
11 day period prescribed by the September Sales Order. (*Id.* ¶ 25.) In response, on July 7, 2011,
12 Colorado delivered the RECs generated in the second fiscal quarter by a signed attestation. (*Id.*
13 ¶ 26.) Nexant also rejected that delivery, on the basis that it was not made via WREGIS. (*Id.*
14 ¶ 27.)

15 Colorado alleges that it "has fully performed all terms, conditions, covenants, and
16 promises of the Master Agreement and September Sales Order, except to the extent that it has
17 been prevented or excused from performing by the acts of Nexant or others." (Compl. ¶ 32.)
18 To date, Nexant has failed to take delivery of approximately 17,477 RECs for the year 2011,
19 resulting in damages of not less than $139,816.00. (*Id.* ¶¶ 28, 33-34.) Based on these and other
20 allegations, Colorado brings claims for breach of contract and breach of the implied covenant of
21 good faith and fair dealing.

## ANALYSIS

**A.  Applicable Legal Standard.**

24 A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the
25 pleadings fail to state a claim upon which relief can be granted. The complaint is construed in
26 the light most favorable to the non-moving party and all material allegations in the complaint
27 are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). However, even
28 under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted). However, the Court may consider documents attached to the complaint, documents relied upon but not attached to the complaint, when the authenticity of those documents is not questioned, and other matters of which the Court can take judicial notice, without converting a motion to dismiss into a motion for summary judgment. *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

Nexant has asked the Court to take judicial notice of The California Renewables Portfolio Standard Program, California Public Utilities Code §§ 399.11 through 399.31, and California Public Utilities Commission Resolution No. E-4178. Because the Court did not rely on these documents to resolve the motion, the Court DENIES the request for judicial notice as moot.

**B.  Colorado Fails to State a Claim for Breach of Contract.**

Nexant moves to dismiss on the basis that Colorado fails to state a claim for relief. The essential elements of a claim for breach of contract under California law are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff. *Reichert v. General Insurance Co.*, 68 Cal. 2d 822, 830 (1969). Nexant argues that Colorado has failed to allege facts to support the second and third elements. Because the Court finds that Colorado has failed to allege facts to support the second

4

1 element, the Court need not and declines to reach the question of whether Colorado pleads
2 sufficient facts in support of the third element.

3 Colorado alleges that WREGIS did not create RECs until ninety days after the end of
4 each generation month, which prevented Colorado from delivering the first quarter RECs to
5 Nexant within the Delivery Period. (*Id.* ¶ 20.)[2] Colorado also alleges that it chose to use
6 delivery via attestation for the second quarter, because Nexant had stated that it would only
7 accept RECs delivered no later than fifteen days after the end of the fiscal quarter in which they
8 were generated. (*Id.* ¶ 26.) In essence, Colorado argues that, because of the way WREGIS is
9 structured, it was impossible to use WREGIS as the Delivery Method and deliver RECs to
10 Nexant within the Delivery Period.

11 Colorado has not provided, and the Court is not aware of, any authority that stands for
12 the proposition that, where the facts alleged show that the plaintiff is in breach of a contract, the
13 plaintiff still may sue for breach and rely on a theory of impossibility to show it was excused
14 from performing. *See, e.g., Northrop Corp. v. Triad Int's Mktg. S.A.*, 811 F.2d 1265, 1270-71
15 (9th Cir. 1987) (noting that California Civil Code section 1511 "is a codification of a rule of
16 purely private law embodying a common-law defense in an action between contracting parties
17 for breach"). Colorado relies on *People v. McIntosh*, 177 Cal. App. 4th 534 (2009), in support
18 of this argument. However, the Court finds *McIntosh* inapposite.

19 In *McIntosh,* the defendant moved to withdraw his plea agreement when the judge who
20 presided over its entry was not available to sentence the defendant. *Id.* at 537. The court held
21 that "when sentencing discretion is expressly constrained by the terms of a plea agreement and
22 the judge who accepted the plea becomes unavailable for reasons beyond the court's or the
23 prosecutor's control, the defendant is not automatically entitled to withdraw his or her plea... in
24 the absence of evidence that exercise of individualized judicial discretion was a material
25 element of the consideration for the plea agreement." *Id.* The court's reasoning was premised

---

[2] Colorado argues that at the time Nexant prepared the September Sales Order WREGIS provided that RECs would be available for transmittal 90 days after the end of each generation month, and cite to paragraph 20 of the Complaint in support of that argument. However, paragraph 20 does not clearly stand for that proposition, and Colorado does not allege that Nexant was aware of the provisions of this rule but that it was not.

5

upon general principles of contract law, namely that "partial impossibility of performance by one party excuses the other party from performing under an agreement only if the term that cannot be performed was material to the agreement as a whole." *Id.* at 545.

Here, unlike the situation in *McIntosh*, Colorado attempts to use the doctrine of impossibility as a sword rather than as a shield. In *McIntosh* by contrast, the "claim" was, in effect, a claim to rescind a contract and impossibility of performance was used to defend that claim. Second, although Colorado argues that the Delivery Method and Delivery Period were not material terms, the Complaint does not include any facts that support those arguments.

Accordingly, the Court finds that Colorado has failed to allege facts that show it was excused from performing under the contract.

**D. Colorado Fails to State a Claim for Breach of the Covenant of Good Faith and Fair Dealing.**

Colorado's second claim, that Nexant breached the implied covenant of good faith and fair dealing, fails for the same reason that its breach of contract claim fails. A claim for breach of the covenant of good faith and fair dealing requires a plaintiff to show performance or excuse for nonperformance. *See Rosenfeld v. JP Morgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010) (citing Judicial Council of California Civil Jury Instruction 325) (reciting the elements of a claim for breach of the covenant of good faith and fair dealing). As the Court has already noted, Colorado fails to allege facts sufficient to satisfy this requirement.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Nexant's motion to dismiss. However, the Court cannot say that it would be futile to grant Colorado leave to amend. Accordingly, if Colorado seeks to pursue these claims, it shall file an amended complaint by October 16, 2012. Nexant shall file its answer or otherwise respond within the time required by the Federal Rules.

**IT IS SO ORDERED.**

Dated: September 25, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE